**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PAULINA POE,

Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE; TAMMIE M. GREGG, in her official capacity as Principal Deputy Director, Bureau of Justice Assistance; and TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,

Defendants.

Case No. 1:26-cv-01552

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM, TO PARTIALLY SEAL, AND FOR PROTECTIVE ORDER**

Amy Whelan (*pro hac vice pending*)
National Center for LGBTQ Rights
1401 21st Street #11548,
Sacramento, CA 95811
(415) 365-1338
awhelan@nclrights.org

Sarah Austin (*pro hac vice pending*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
saustin@glad.org

Alexander Shalom (NJ055)
Natalie Kraner (NY0304)
Kegan Brown (*pro hac vice pending*)
Amanda K. Cipriano (*pro hac vice pending*)
Mikayla R. Berliner (*pro hac vice pending*)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07960

(212) 419-5866
ashalom@lowenstein.com
nkraner@lowenstein.com
kbrown@lowenstein.com
acipriano@lowenstein.com
mberliner@lowenstein.com

Alyssa C. Lareau (D.C. Bar 494881, *admission to D.D.C. pending*)
Wardenski P.C.
300 New Jersey Avenue NW, Suite 300
Washington, DC 20001
(202) 935-4224
alyssa@wardenskilaw.com

*Attorneys for Plaintiff Paulina Poe*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

BACKGROUND ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 3

I. PLAINTIFF SHOULD BE PERMITTED TO PROCEED UNDER PSEUDONYM ........ 3

A. This Matter is Highly Sensitive and Personal in Nature ........ 4

B. Identification Poses a Risk of Retaliatory Physical and Mental Harm to Plaintiff and Innocent Non-Parties ........ 5

C. The Public Interest is Not Harmed and Defendants Face No Prejudice if Plaintiff Proceeds by Pseudonym ........ 11

II. PLAINTIFF IS ALSO ENTITLED TO PARTIAL SEALING OF THE SUPPORTING DECLARATION AND A PROTECTIVE ORDER. ........ 13

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2025 Subpoena to Child.'s Nat'l Hosp.*,
No. 1:25-cv-03780-JRR, 2026 WL 160792 (D. Md. Jan. 21, 2026) ....................................10

*Am. Ass'n of Univ. Professors v. Trump*,
815 F. Supp. 3d 907 (N.D. Cal. 2025) ....................................................................................8

*Am. Bar Ass'n v. U.S. Dep't of Just.*,
783 F. Supp. 3d 236 (D.D.C. 2025) .........................................................................................8

*Casa, Inc. v. Trump*,
793 F. Supp. 3d 703 (D. Md. 2025) .......................................................................................12

*Charles H. v. District of Columbia*,
No. 21-CV-00997, 2021 WL 6619327 (D.D.C. Apr. 9, 2021) ..........................................6, 14

*Doe v. Alger*,
317 F.R.D. 37 (W.D. Va. 2016) ..............................................................................................11

*Doe v. Austin*,
No. 2:22-CV-00368-NT, 2023 WL 3568188 (D. Me. May 19, 2023) .....................................6

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) ......................................................................................7

*Doe v. Blue Cross & Blue Shield of R.I.*,
794 F. Supp. 72 (D.R.I. 1992) ..................................................................................................6

*Doe v. Bogan*,
542 F. Supp. 3d 19 (D.D.C. 2021) ...........................................................................................4

*Doe v. Cabrera*,
307 F.R.D. 1 (D.D.C. 2014) ..................................................................................................5, 6

*Doe v. City of Apple Valley*,
No. 20-CV-499, 2020 WL 1061442 (D. Minn. Mar. 5, 2020) ..............................................12

*Doe v. Fed. Republic of Ger.*,
680 F. Supp. 3d 1 (D.D.C. 2023) ...................................................................................3, 4, 5, 11

*Doe v. Porter*,
370 F.3d 558 (6th Cir. 2004) ..................................................................................................13

*Doe v. Porter*,
370 F.3d 558 (6th Cir. 2004) ....................13

*Doe v. Provident Life & Accident Ins. Co.*,
176 F.R.D. 464 (E.D. Pa. 1997) ....................12

*Doe v. Settle*,
24 F.4th 932 (4th Cir. 2022) ....................12

*Doe v. Smith*,
No. 18-12266, 2018 WL 11584808 (D. Mass. Nov. 5, 2018) ....................11

*Doe v. Uber Techs., Inc.*,
No. 1:19-cv-00903, 2019 U.S. Dist. LEXIS 251288 (D.D.C. Mar. 29, 2019) ....................13

*Doe v. U.S. Dep't of State*,
No. 1:15-cv-01971, 2015 WL 9647660 (D.D.C. Nov. 3, 2015) ....................11

*Does 1-2 v. Off. of Pers. Mgmt.*,
763 F. Supp. 3d 58 (D.D.C. 2025) ....................12

*E.W. v. N.Y. Blood Ctr.*,
213 F.R.D. 108 (E.D.N.Y. 2003) ....................12

*Farmer v. Brennan*,
511 U.S. 825 (1994) ....................7

*Hardaway v. D.C. Hous. Auth.*,
843 F.3d 973 (D.C. Cir. 2016) ....................14

*Helling v. McKinney*,
509 U.S. 25 (1993) ....................7

*J.W. v. District of Columbia*,
318 F.R.D. 196 (D.D.C. 2016) ....................11

*Jenner & Block LLP v. U.S. Dep't of Just.*,
784 F. Supp. 3d 76 (D.D.C. 2025) ....................7

*John Doe Co. v. CFPB*,
321 F.R.D. 31 (D.D.C. 2017) ....................3, 4, 5, 11

*Jones v. Trump*,
No. 25-401, 2025 WL 485419 (D.D.C. Feb. 13, 2025) ....................6, 13, 14

*Kelly v. Hegseth*,
No. 26-cv-00081, 2026 WL 391777 (D.D.C. Feb. 12, 2026) ....................7

*Kingdom v. Trump*,
No. 1:25-cv-00691-RCL (D.D.C. Feb. 19, 2026) ........ 8, 9

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. 25-3501 (JEB), 2025 WL 2897654 (D.D.C. Oct. 10, 2025) ........ 12

*Metlife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017) ........ 13, 14

*President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*,
798 F. Supp. 3d 77 (D. Mass. 2025) ........ 7

*In re Sealed Case*,
971 F.3d 324 (D.C. Cir. 2020) ........ 3, 4

*Susman Godfrey LLP v. Exec. Off. of the President*,
789 F. Supp. 3d 15 (D.D.C. 2025) ........ 7

*United States v. Abrego Garcia*,
802 F. Supp. 3d 1055 (M.D. Tenn. 2025) ........ 8, 9

*United States v. Hubbard*,
650 F.2d 293 (D.C. Cir. 1980) ........ 13, 14

*United States v. Me. Dep't of Educ.*,
No. 1:25-cv-00173-SDN, ECF No. 41 (Sept. 16, 2025) ........ 10

**Statutes**

5 U.S.C. §§ 701–706 ........ 1

**Regulations**

28 C.F.R. § 115.42(c) ........ 9

Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ........ 8

**Other Authorities**

Press Release, U.S. Dep't of Justice, Off. of Pub. Affairs, Justice Department Notifies California and Maine of Investigations into Whether Housing Biological Men in Women's Prisons Violates Constitution (Mar. 26, 2026), https://www.justice.gov/opa/pr/justice-department-notifies-california-and-maine-investigations-whether-housing-biological ........ 9, 11

## BACKGROUND

Plaintiff Paulina Poe is an incarcerated transgender woman. She brings this action to challenge a December 2, 2025, memorandum issued by the United States Department of Justice ("DOJ"). The Memorandum effectively rescinded, without notice-and-comment rulemaking, all regulations under the Prison Rape Elimination Act ("PREA") that protect transgender, intersex, and gender non-conforming people from sexual abuse in custody. Plaintiff brings claims under the APA, 5 U.S.C. §§ 701–706, seeking to have the Memorandum declared unlawful and set aside.

Contemporaneous with the filing of the Complaint, Plaintiff files this motion to proceed under pseudonym and to partially seal documents, including her full residence address pursuant to Local Civil Rule 5.1(c). Plaintiff moves to proceed pseudonymously to protect herself from the stigmatization associated with being transgender, and to protect herself from harassment, retaliation, and violence—including sexual violence—that could result from the public disclosure of her identity as a transgender woman suing the federal government. Plaintiff also moves for a related protective order, as explained herein, to prevent disclosure of her identity, including Plaintiff's (i) biographical details, including, but not limited to, her age, place of residence, current and former names, and date of birth, (ii) her criminal history, including the crimes she was convicted of, and the period of her incarceration, (iii) her disciplinary record, any assaults or harassment she has experienced, her rehabilitation activities, the facilities where she is or has been housed, and her relationship and communications with her criminal lawyer, and (iv) all details of Plaintiff's medical history, records, treatments, and specific physical and mental health diagnoses of any kind.

For these reasons and the reasons set forth below, Plaintiff moves for leave to litigate this matter under a pseudonym; for leave to make necessary redactions in her filings of information that could be used to identify her; and for entry of a protective order that will ensure Plaintiff's

identity and identifying information is disclosed to Defendants' attorneys only, who must exercise care to prevent Plaintiff's identity from being shared with Defendants and the public.

## STATEMENT OF FACTS

Plaintiff relies upon and incorporates by reference her Complaint and the supporting declaration filed with this motion, which set forth relevant facts demonstrating her need to litigate this matter under a pseudonym.

Plaintiff is a transgender woman who is housed in a men's correctional facility, where she is constantly at risk of sexual harassment, abuse, and assault. Transgender people in United States prisons and jails face staggering rates of sexual abuse, and Plaintiff is particularly vulnerable given her status as a transgender woman in a men's facility. (Compl. ¶¶ 3, 76.) Plaintiff has female physical characteristics. (Declaration of Paulina Poe ("Poe Decl.") ¶ 3.) She has been sexually assaulted by a male prisoner and has experienced ongoing sexual harassment, unwanted touching, propositions, and threats from men in her facility. She has also experienced sexual harassment and strip-searches by male officers who force her to expose her body and breasts. She is repeatedly treated as a target for sexual victimization by men in the facility where she is housed. (*Id.* ¶¶ 4–9.)

If Plaintiff's identity is disclosed, she faces significant risk of additional acts of sexual assault and harassment and public disclosure of confidential medical and other highly sensitive information. The threats she faces within her facility will likely intensify and staff or other prisoners could retaliate against her for speaking up. Staff and prisoners could also target Ms. Poe for challenging the administration's actions in court. The federal government could also retaliate against her for filing suit and, in doing so, put her health and safety at an even greater risk.

## ARGUMENT

### I. PLAINTIFF SHOULD BE PERMITTED TO PROCEED UNDER PSEUDONYM.

While the identities of parties are generally public knowledge, district courts allow plaintiffs to proceed anonymously "in special circumstances" when "the impact of the plaintiff's anonymity outweighs the public interest in open proceedings and on fairness to the defendant." *John Doe Co. v. CFPB*, 321 F.R.D. 31, 33 (D.D.C. 2017) (citation modified). This Court uses a balancing test to evaluate whether a plaintiff may proceed anonymously: "whether the non-speculative privacy interest that the movants have identified outweigh[s] the public's substantial interest in knowing the identities of the parties in litigation, along with any legitimate interest that the non-moving parties' interest may have in revealing the identity of the movants." *Id.* at 34 (citation omitted). This test is "flexible and fact driven." *Doe v. Fed. Republic of Ger.*, 680 F. Supp. 3d 1, 4 (D.D.C. 2023) (citation omitted). It assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* (quoting *In re Sealed Case*, 971 F.3d 324, 326–27 (D.C. Cir. 2020)) (hereinafter "*Doe* factors").

Plaintiff's case is precisely the type of case that warrants an exception to the general presumption of open judicial proceedings. Public disclosure of Plaintiff's highly sensitive and

personal medical information, and identity as a transgender woman suing the federal government, would put her at a significant risk of severe harm. In addition, a lack of anonymity in this case would have a chilling effect on similarly situated potential future litigants, and retaliation against Plaintiff could cause collateral harm to non-parties, as explained below. Given that this action is a procedural challenge to a government policy under the Administrative Procedure Act, disclosure of Plaintiff's medical and other highly sensitive information and identity is not necessary to satisfy the public's interest in open judicial proceedings or to avoid any potential prejudice to Defendants. The first, second, fourth, and fifth *Doe* factors weigh in favor of pseudonymity.[1]

**A. This Matter is Highly Sensitive and Personal in Nature.**

The first *Doe* factor—"whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature"—weighs in favor of Plaintiff. *Doe*, 680 F. Supp. 3d at 4. This matter involves highly sensitive and personal information about Plaintiff, including her medical history, sexual abuse, and harassment she has suffered, transgender status, and mental and physical health. *Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021) (The "'intimate or sensitive personal information' that are traditionally recognized under this factor, [include] 'sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors.'" (quoting *In re Sealed Case*, 971 F.3d at 327)). As an incarcerated transgender woman who is housed in a men's facility, Plaintiff faces uniquely sensitive circumstances involving her medical treatment of gender dysphoria, her physical safety, her bodily autonomy, and her history of abuse and harassment while incarcerated. Public disclosure of these intimate details tied to Plaintiff's identity would expose highly sensitive and personal information.

[1] The third factor is not relevant because Plaintiff is not a minor.

### B. Identification Poses a Risk of Retaliatory Physical and Mental Harm to Plaintiff and Innocent Non-Parties.

The second *Doe* factor—"whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties"—supports Plaintiff's motion. *Doe*, 680 F. Supp. 3d at 4. Plaintiff is at risk of retaliatory physical and mental harm if she is not permitted to proceed by pseudonym. As a transgender woman in a men's facility, Plaintiff is at a disproportionately high risk of sexual abuse. A 2013 study by the DOJ found, based on data collected over a five-year period, that 35% of transgender people in state and federal prisons were sexually assaulted each year. (Compl. ¶ 67 (citing Allen J. Beck, *U.S. DOJ BJS, Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–12* (Dec. 2014)).) From 2011 to 2012, transgender people were sexually assaulted at nearly ten times the rate for the general incarcerated population. (*Id.*)

Plaintiff's declaration details specific abuse, threats, and harassment she has already experienced as a transgender woman in a male facility. The prospect of Plaintiff's sexual abuse and medical history being available to the public causes Plaintiff severe anxiety and stress. *See Doe v. Cabrera*, 307 F.R.D. 1, 6–7 (D.D.C. 2014) (holding that a plaintiff showed a possibility of psychological harm from having her identity disclosed when the plaintiff suffered from severe anxiety and stress based on fear that intimate details about her sexual and medical history will be revealed). If Plaintiff's identity is disclosed in this litigation, the men who have assaulted, threatened, or harassed her will find out she is speaking about their conduct and may subject her to retaliatory harassment or violence. Plaintiff also faces a risk of retaliation from facility staff who put her in danger of sexual abuse by engaging in the traumatizing strip searches, sexual harassment, and other conduct detailed in her declaration. (Poe Decl. ¶¶ 4–9.)

Plaintiff may also be subject to future abuse, harassment, or psychological trauma because of the high-profile nature of a case challenging federal government action. *See Cabrera*, 307 F.R.D. at 6–7 ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case."). Plaintiff may also be singled out as a target for violence in her own facility, where prisoners or staff could be angered by her legal challenge to federal actions intended to strip her and other transgender people of legal protections. Staff and male prisoners may attempt to silence her for suing the government and advocating for her rights and safety as a transgender woman. *See Jones v. Trump*, No. 25-401, 2025 WL 485419, at *2 (D.D.C. Feb. 13, 2025) (granting pseudonym motion for a transgender woman incarcerated in federal prison who "could face widespread criticism from the public and retaliation from prison staff"); *see also Charles H. v. District of Columbia*, No. 21-CV-00997, 2021 WL 6619327, at *3 (D.D.C. Apr. 9, 2021) (granting anonymity to incarcerated individuals who brought claims against the D.C. jails where they were detained, noting that the second factor weighs in plaintiffs' favor because "plaintiffs' assertion that staff might resent the 'systemic changes' that plaintiffs are advocating carries some weight"); *Doe v. Austin*, No. 2:22-CV-00368-NT, 2023 WL 3568188, at *1 (D. Me. May 19, 2023) (granting pseudonym motion based on plaintiffs' valid concern that disclosure of their transgender status would subject them to harassment and violence); *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 72–73 (D.R.I. 1992) (granting plaintiff's motion to proceed anonymously and acknowledging that a "cloak of privacy" was necessary to shield plaintiff from the stigmatization, harassment, and discrimination he would otherwise endure because of his transgender status and identity).

This risk is heightened by the fact that Plaintiff is incarcerated and unable to protect herself by avoiding people who would be motivated to retaliate against her. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (stating that incarcerated people are "stripped . . . of virtually every means of self-protection" and unable to "access . . . outside aid"); *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (explaining that incarceration is a restraint on liberty that renders people unable to care for themselves or protect their safety (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))); *Doe v. Beard*, 63 F. Supp. 3d 1159, 1164 (C.D. Cal. 2014) (noting that "prisoners cannot simply avoid each other as civilians can").

Finally, Plaintiff faces a serious risk of retaliation by Defendants and other federal government officials for suing the United States. There is a documented pattern of the federal government retaliating against those who resist its policies, particularly in the last two years. *See, e.g.*, *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 99 (D.D.C. 2025) (finding that the federal government retaliated against a law firm in part because it challenged an executive order on behalf of transgender clients); *Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15, 48 (D.D.C. 2025) (finding that the federal government retaliated against a law firm in part for donating to an organization that sued the federal government for its policy banning transgender servicemembers from the military); *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 121 (D. Mass. 2025) (finding that Harvard was "entitled to summary judgment on its claim for First Amendment retaliation on the face of the administrative record"); *Kelly v. Hegseth*, No. 26-cv-00081, 2026 WL 391777, at *2, *11 (D.D.C. Feb. 12, 2026) (finding that U.S. Senator Mark Kelly was "reprimanded for exercising his First Amendment right to speak on matters of public concern" after he engaged in speech reminding military servicemembers that they can refuse unlawful orders).

The DOJ—the agency defendant here—has directly and consistently participated in the federal government's ongoing retaliation campaign. *See, e.g.*, *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 246–47 (D.D.C. 2025) (finding that DOJ likely revoked grants in retaliation for the American Bar Association's litigation against the United States); *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 948–49 (N.D. Cal. 2025) (finding that DOJ investigations of university and subsequent revocations of federal funds were likely motivated by retaliation for speech of university employees, faculty, and students); *United States v. Abrego Garcia*, 802 F. Supp. 3d 1055, 1064–65 (M.D. Tenn. 2025) (finding a "realistic likelihood" that DOJ brought criminal charges against an individual in retaliation for his successful challenge to a previous unlawful deportation).

The federal government has already shown its willingness to retaliate against transgender incarcerated people who, like Plaintiff, challenge discriminatory federal policies flowing from Executive Order 14168. *See, e.g.*, Order Granting Plaintiffs' Motion for a Protective Order, *Kingdom v. Trump*, No. 1:25-cv-00691-RCL, ECF No. 124 at 1 (D.D.C. Feb. 19, 2026) (finding based on "unrebutted evidence" that the government had retaliated against transgender class members who participated in litigation against the administration).[2]

The federal government has also declared a policy of categorically denying incarcerated transgender women safe housing placements in women's facilities, terminating medically necessary care for incarcerated transgender people, and purporting to end all federal funding of so-called "gender ideology," including in correctional settings. *See* Exec. Order No. 14168 §§ 3(e), 3(g), 4(a), 4(c); Notice of New BOP Policy, *Kingdom v. Trump*, No. 1:25-cv-00691-RCL, ECF

[2] *See also* Order Revising the Protective Order, *Kingdom v. Trump*, No. 1:25-cv-00691-RCL, ECF No. 173, 173-1 (D.D.C. Apr. 16, 2026) (ordering the parties to comply with certain procedures to resolve allegations of government retaliation).

No. 125 (D.D.C. Feb. 19, 2026). Despite multiple injunctions and ongoing litigation challenging implementation of those policies in federal facilities, (Compl. ¶ 56), there is consistent evidence in the *Kingdom* record that federal officials continue to deny healthcare and related accommodations to transgender incarcerated people. *Kingdom v. Trump*, No. 1:25-cv-00691-RCL, ECF No. 78-2 at 8–9 (D.D.C. Aug. 8, 2025); *id.*, ECF No. 107 at 4–9 (D.D.C. Dec. 22, 2025); *id.*, ECF No. 116 at 2 (D.D.C. Feb. 13, 2026). In addition, DOJ has taken steps to implement the same "gender ideology" policies in state correctional facilities. On March 26, 2026, DOJ announced investigations of two states for allowing transgender women to be housed in women's facilities consistent with federal regulations that expressly permit such placements under the Prison Rape Elimination Act, *see* 28 C.F.R. § 115.42(c). *See* Press Release, U.S. Dep't of Justice, Off. of Pub. Affairs, *Justice Department Notifies California and Maine of Investigations into Whether Housing Biological Men in Women's Prisons Violates Constitution* (Mar. 26, 2026), https://www.justice.gov/opa/pr/justice-department-notifies-california-and-maine-investigations-whether-housing-biological ("DOJ Press Release").

If Plaintiff's identity or potentially identifying information is disclosed in this matter, the federal government could retaliate by implementing these cruel and discriminatory policies in her facility or against her directly, which could interfere with her continued advocacy for safe housing or her medical care. Indeed, there is evidence in another case that federal government officials ordered the "immediate termination" of a transgender woman's medically necessary care after she participated in litigation against the federal government. *Kingdom v. Trump*, No. 1:25-cv-00691-RCL, ECF No. 127 at 2 (D.D.C. Feb. 25, 2026). In addition, the government could attempt to investigate, prosecute, or take other direct action against Plaintiff. *See Abrego Garcia*, 802 F. Supp. 3d at 1064–65. Or the government could take other retaliatory actions affecting Plaintiff's facility,

such as turning a blind eye to complaints of sexual violence or conditions of confinement in the facility. Any of these actions would be devastating for Plaintiff and dangerous to her mental and physical health and well-being.

Given all of the above, the significant risk of severe harm to Plaintiff if her identity is disclosed supports allowing Plaintiff to proceed under pseudonym.

In addition, the risk of retaliation against Plaintiff by the federal government could cause harm to non-parties who are transgender. For example, if Defendants retaliated against Plaintiff by attempting to implement "gender ideology" policies in her facility, then all transgender people in the facility could lose access to medical care and opportunities for safer housing placements. Further, if the federal government investigated or otherwise targeted Plaintiff's facility for retaliatory action, it would likely seek to identify all transgender incarcerated people in the facility. *See, e.g.*, *In re 2025 Subpoena to Child.'s Nat'l Hosp.*, No. 1:25-cv-03780-JRR, 2026 WL 160792, at *4, *9 (D. Md. Jan. 21, 2026) (explaining how DOJ subpoenaed a hospital for extensive identifying information and medical records of "each" transgender patient who received transgender healthcare at the hospital, and finding that the subpoena was an "overreach" intended "to intimidate and harass" transgender patients, their families, and their medical providers); Amicus Curiae Brief in Support of Motion to Quash Subpoena, *United States v. Me. Dep't of Educ.*, No. 1:25-cv-00173-SDN, ECF No. 41 at 5–7 (Sept. 16, 2025) (explaining that, in connection with a lawsuit seeking to withdraw federal funds from Maine over the state's sports participation policies, the federal government sought identifying information for all transgender students who sought to participate in school sports, as well as the identities of all student athletes on all school sports rosters over a two-year period). This is not mere speculation. As noted above,

DOJ recently announced that it is investigating two states because of their PREA-compliant housing policies for transgender women. *See* DOJ Press Release.

If Defendants retaliate against Plaintiff by targeting her facility, the safety and privacy of all transgender incarcerated people in the facility will be at risk.

Accordingly, Plaintiff has shown that she should be permitted to proceed by pseudonym under the standards set forth by D.C. federal courts.

**C. The Public Interest is Not Harmed and Defendants Face No Prejudice if Plaintiff Proceeds by Pseudonym.**

The fourth and fifth *Doe* factors—"whether the action is against a governmental or private party" and "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously"—weigh in Plaintiff's favor. *Doe*, 680 F. Supp. 3d at 4. Plaintiff's suit challenges Defendants' effective rescission of certain PREA regulations without notice and comment, in violation of the APA. Courts have generally concluded that pseudonymity is appropriate in suits brought against the government rather than private parties. *See, e.g.*, *J.W. v. District of Columbia*, 318 F.R.D. 196, 201 (D.D.C. 2016) ("[A]nonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing." (citation modified)); *Doe v. U.S. Dep't of State*, No. 1:15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015) ("[G]overnments [are] less damaged by reputational attacks than are private defendants."); *Doe v. Smith*, No. 18-12266, 2018 WL 11584808, at *1 (D. Mass. Nov. 5, 2018) ("Courts are more likely to permit plaintiffs to proceed under a pseudonym when they are pursuing a claim against the government rather than a private individual." (citation omitted)); *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016) ("When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under

a pseudonym than if an individual has been accused publicly of wrongdoing." (citation omitted)); *E.W. v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[W]here a plaintiff attacks governmental activity . . . the plaintiff's interest in proceeding anonymously is considered particularly strong" because "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant.").

Further, various courts have held that where a plaintiff's challenge to government action is purely legal or facial, the public's interest is not harmed by the use of a pseudonym. *See Doe v. Settle*, 24 F.4th 932, 939 n.5 (4th Cir. 2022) (noting that "a litigant's identity may not be as important in purely legal or facial challenges"); *Casa, Inc. v. Trump*, 793 F. Supp. 3d 703, 724 n.8 (D. Md. 2025) (similar). In such cases, courts have found that "knowing the Plaintiffs' identities lends little to the public's ability to follow the proceedings or understand the disposition of the case." *Doe v. City of Apple Valley*, No. 20-CV-499 (PJS/DTS), 2020 WL 1061442, at *2 (D. Minn. Mar. 5, 2020); *see Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) ("[B]ecause of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities."). Because Plaintiff raises a facial legal challenge to government action, the fourth factor weighs heavily in her favor.

Similarly, under the fifth factor, Defendants are "unlikely to suffer prejudice" where, as here, "Plaintiff['s] individual identit[y] [is] not relevant to the merits of [her] claims." *Does 1-2 v. Off. of Pers. Mgmt.*, 763 F. Supp. 3d 58, 62 (D.D.C. 2025); *accord League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-3501 (JEB), 2025 WL 2897654, at *3 (D.D.C. Oct. 10, 2025). Plaintiff challenges Defendants' compliance with mandatory administrative procedures in issuing the Memorandum—a pure legal issue that does not depend on her identity or necessitate any discovery as to the particulars of Plaintiff's identity. *E.g.*, *Casa, Inc.*, 793 F. Supp. 3d at 724 n.8.

Nor will Defendants face any prejudice because Plaintiff does not object to her name being disclosed to defense counsel under an appropriate protective order. *See, e.g.*, *Doe v. Uber Techs., Inc.*, No. 1:19-cv-00903, 2019 U.S. Dist. LEXIS 251288, at *7-8 (D.D.C. Mar. 29, 2019) (finding no prejudice to defendants in allowing plaintiff to proceed pseudonymously because "defendants' attorneys will be permitted to access information necessary to litigate this matter"); *see also Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004) (granting protective order allowing plaintiffs to litigate pseudonymously and permitting plaintiffs' names to be revealed to defense counsel did not hinder defendants' ability to prepare for trial). As such, allowing Plaintiff to proceed anonymously will not hinder Defendants' ability to litigate this matter.

## II. PLAINTIFF IS ALSO ENTITLED TO PARTIAL SEALING OF THE SUPPORTING DECLARATION AND A PROTECTIVE ORDER.

Plaintiff also requests protection of any information that could be used to identify her. For the same reasons that support Plaintiff's request to proceed anonymously, Plaintiff requests that the Court grant her leave to file an unredacted copy of her declaration under seal designated as "attorneys' eyes only," along with the redacted copy filed publicly with this motion, and to not publicly disclose her residence address as required by Local Civil Rule 5.1(c).

Sealing must be justified by "competing interests" that outweigh the public's presumptive right of access to court documents. *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). "[T]he right of public access . . . is not absolute." *Id.* To determine whether sealing is appropriate, the D.C. Circuit developed a six-factor test in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980). The *Hubbard* factors are:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the

> purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Child.'s Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 650 F.2d at 317–22).

Plaintiff's privacy interests and the threats of harm described above present "competing interests" outweighing the public's presumptive right of access to the information redacted in her supporting declaration. *Metlife, Inc.*, 865 F.3d at 665.

For similar reasons supporting Plaintiff's motion to proceed pseudonymously, Plaintiff's motion to seal and for protective order should be granted under the *Hubbard* factors: (1) the public has no need to access documents that describe Plaintiff's medical history or treatments, *see Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (explaining that the public has no need for access to documents that describe plaintiff's medical condition); (2) there has been no previous public access to these documents; (3) Plaintiff has objected to the disclosure of any documents revealing her identity, address, sexual abuse and harassment she has suffered, medical information, and transgender status; (4) Plaintiff has strong privacy interests in her medical treatments, diagnoses, and bodily autonomy; (5) the risk of prejudice to Plaintiff is high, as it is her identity and information that will be revealed if the motion is denied; and (6) the documents are introduced to support this pseudonym motion and are not relevant to the merits of Plaintiff's procedural APA challenge. *See, e.g.*, *Jones*, 2025 WL 485419, at *5 (granting pseudonym motion along with partial sealing and protective order); *Charles H.*, 2021 WL 6619327, at *3 (granting pseudonym motion along with motion to seal as "essentially the same request").

Plaintiff is one of very few transgender women in her facility, and any specific information about her personal history and circumstances could be used to identify and harm her. If disclosed, that information would frustrate the purpose of pseudonymity and put her at risk of retaliation and

further harassment and violence. Redacting her identifying information is critical to preserve her safety and access to court.

To protect her safety and privacy, Plaintiff respectfully moves this Court to seal all potentially identifying information in her declaration and enter a protective order to prohibit disclosure of any potentially identifying information to persons other than Defendants' counsel, including (i) Plaintiff's biographical details, including, but not limited to, her age, place of residence, current and former names, and date of birth, (ii) her criminal history, including the crimes she was convicted of and the period of her incarceration, (iii) her disciplinary record, any assaults or harassment she has experienced, her rehabilitation activities, the facilities where she is or has been housed, and her relationship and communications with her criminal lawyer, and (iv) all details of Plaintiff's medical history, records, treatments, and specific physical and mental health diagnoses of any kind.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant her motion to (1) proceed under a pseudonym, (2) partially seal her declaration, and (3) enter a protective order.

Dated: May 6, 2026

Respectfully submitted,

*/s/ Alexander Shalom*

Amy Whelan (*pro hac vice pending*)
National Center for LGBTQ Rights
1401 21st Street #11548,
Sacramento, CA 95811
(415) 365-1338
awhelan@nclrights.org

Sarah Austin (pro hac vice pending)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
saustin@glad.org

Alexander Shalom (NJ055)
Natalie Kraner (NY0304)
Kegan Brown (pro hac vice pending)
Amanda K. Cipriano (pro hac vice pending)
Mikayla R. Berliner (pro hac vice pending)
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07960
(212) 419-5866
ashalom@lowenstein.com
nkraner@lowenstein.com
kbrown@lowenstein.com
acipriano@lowenstein.com
mberliner@lowenstein.com

Alyssa C. Lareau (D.C. Bar 494881, admission to D.D.C. pending)
Wardenski P.C.
300 New Jersey Avenue NW, Suite 300
Washington, DC 20001
(202) 935-4224
alyssa@wardenskilaw.com

*Attorneys for Plaintiff Paulina Poe*