**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PAULINA POE,

*Plaintiff*,

*v*.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

*Defendants*.

Civil Action No. 1:26-cv-01552

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**INTRODUCTION ........................................................................................................ 1**

**ARGUMENT ........................................................................................................ 1**

I. The Memorandum constitutes properly issued guidance to PREA auditors. ......... 1

II. Plaintiff Lacks Standing........................................................................................ 2

III. The Memorandum is not final agency action. ...................................................... 8

IV. The Memorandum's Guidance to Auditors is Not Justiciable Because It Addresses a Matter Committed to Agency Discretion by Law. ............................ 9

**CONCLUSION ........................................................................................................ 13**

## TABLE OF AUTHORITIES

**Cases**

*American Farm Lines v. Black Ball Freight Serv.*,
397 U.S. 532 (1970) .......... 12

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*,
No. 1:25-CV-00999 (TNM), 2026 WL 523023 (D.D.C. Feb. 25, 2026) .......... 6

*Ass'n of Irritated Residents v. EPA*,
494 F.3d 1027 (D.C. Cir. 2007) .......... 12

*CC Distributors, Inc. v. United States*,
883 F.2d 146 (D.C. Cir. 1989) .......... 5

*City of Orrville, Ohio v. FERC*,
147 F.3d 979 (D.C. Cir. 1998) .......... 4

*Clean Air Counsel v. Pruitt*,
862 F.3d 1 (D.C. Cir. 2017) .......... 8

*Ctr. for Law & Educ. v. Dep't of Educ.*,
396 F.3d 1152 (D.C. Cir. 2005) .......... 4

*Del. Dep't of Nat. Res. & Envtl. Control v. FERC,*
*558 F.3d 575 (D.C. Cir. 2009)* .......... 5

*Edison Elec. Inst. v. EPA*,
996 F.2d 326 (D.C. Cir. 1993) .......... 12

*Fares v. Smith*,
249 F. Supp. 3d 115 (D.D.C. 2017) .......... 3

*Fla. Audubon Soc. v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) .......... 4

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 9, 10, 11, 12

*Lincoln v. Vigil*,
508 U.S. 182 (1993) .......... 9

*Lujan v. Nat'l Wildlife,*
*Fed'n*, 504 U.S. 555 (1990) .......... 5

*Nat'l Ass'n for Advancement of Colored People v. U.S. Dep't of Educ.*,
779 F. Supp. 3d 53 (D.D.C. 2025) .......... 5

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .......... 3

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 3, 5

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954) .......... 8, 12

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 10

*United States v. Lee*,
274 F.3d 485 (8th Cir. 2002) .......... 12

**Statutes**

5 U.S.C. § 701 .......... 9, 10

34 U.S.C. § 30307 .......... 7, 10

**Executive Materials**

28 C.F.R. § 115.401 .......... 2, 6, 10

28 C.F.R. § 115.403 .......... 7

28 C.F.R. § 115.404 .......... 7

Executive Order 14168 .......... 1

## INTRODUCTION

Defendants U.S. Department of Justice, Tammie M. Gregg in her official capacity as Principal Deputy Director of the Bureau of Justice Assistance, and Todd Blanche, in his official capacity as Attorney General of the United States, hereby file this reply in support of their motion for summary judgment. The fundamental disagreement between the parties hinges on two main issues: the effect of the DOJ's Memorandum on the PREA Standards, and the effect of audits under the PREA Standards. If the Court views these two issues in the proper light, it should grant summary judgment in favor of Defendants.

## ARGUMENT

### I. The Memorandum constitutes properly issued guidance to PREA auditors.

Despite no evidence, Plaintiff's opposition continues the assertion that the Memorandum is a "suspension of legally binding regulations without notice-and-comment rulemaking." Pls.' Opp. at 3. Yet this assertion lacks a basis in the text of the Memorandum. The Memorandum states that certain portions of the PREA Standards conflict with Executive Order 14168 and therefore instructs auditors to pause making compliance determinations on those portions. Memorandum at 1-2. Nowhere does the Memorandum state that it is rescinding any regulations. In fact, the Memorandum acknowledges that it cannot change the regulations unilaterally, as it states that the "Department of Justice is currently updating the PREA Standards," a process that would require notice-and-comment rulemaking. *Id*. at 2.

Plaintiff latches onto the Memorandum's language that "facilities shall not be held to subsections of the PREA Standards." *Id*. at 2. But this language does not refer to rescission or suspension of regulations. Rather, it refers to the audits themselves and whether facilities should be "held to," or inspected on, particular sections of the Standards. Advising auditors that they need

not make an assessment about certain Standards is fundamentally different from removing those Standards from the Code of Federal Regulations.

Rather than rescission or suspension, the Memorandum acts as guidance to the PREA auditors, which the DOJ is legally entitled to give. As stated in Defendants' Motion for Summary Judgment, the Standards instruct, and in fact require, the Department of Justice to "develop and issue an audit instrument that will provide guidance on the conduct and contents of audits." 28 C.F.R. § 115.401(d). The Memorandum is fully in line with this provision. It states the DOJ is "implement[ing] changes to the O[nline] A[uditing] S[ystem] and the Audit Instrument." Memorandum at 2. The Standards provide no other instruction on what the DOJ may or may not provide in the audit instrument, and therefore updating it pending amendment of the Standards is fully in line with DOJ's authority.

Plaintiff claims that BOP's rescission of its prior sexual abuse policy proves that the Memorandum rescinded portions of the PREA Standards. Pls.' Opp. at 10. Not so. The Bureau of Prisons' decision to issue a new policy that removes the same portions of the PREA Standards as the Memorandum does not mean that BOP's policy was a result of the Memorandum. This is a classic *post hoc ergo propter hoc* fallacy. That BOP issued its policy approximately three months after the Memorandum proves nothing about the reason for the change in policy. The Memorandum was not addressed to BOP, nor did it have any practical effect on BOP. The far more likely reason for BOP's change in policy is conformance to Executive Order 14,168, which does directly implicate BOP.

## II. Plaintiff Lacks Standing

As Defendants' motion explained, Plaintiff lacks standing because Plaintiff has produced no evidence of actual or concrete injuries that have occurred or that are certainly impending since

the issuance of the Memorandum. Plaintiff's opposition effectively concedes this point and instead pivots to a new theory of standing based on procedural injury. *See* Pls.' Opp. at 3-6.

As an initial matter, Plaintiff's new theory comes too late; the failure to allege a procedural injury in the Complaint precludes Plaintiff's attempt to do so now. The only harms cited in the Complaint take the form of alleged injuries associated with Plaintiff's conditions of confinement. *See* Compl. ¶¶ 75-85. Plaintiff cannot now attempt to amend the Complaint through their briefs to include a newly-raised claim of procedural injury. *See Fares v. Smith*, 249 F. Supp. 3d 115, 125 (D.D.C. 2017) ("[I]t is axiomatic that Plaintiffs cannot amend their Complaint via their briefs[.]").

In any event, Plaintiff cannot convert speculative fears into a procedural injury by arguing Plaintiff lost alleged "legal protections" due to the Memorandum. The fact that the Memorandum does not change the PREA Standards shows that Plaintiff does not have standing. Plaintiff claims that the Memorandum puts Plaintiff at risk of no longer being "screened for risk of sexual victimization," of being "searched by male officers," and of being harmed in how he "is housed." *Id*. at 4. But this argument stems from the faulty premise that the PREA Standards have been suspended or "unilaterally revoke[d]." *See* Pls.' Opp. at 4-5. When viewed through the proper lens, Plaintiff cannot be harmed by an amendment to the audit instrument.

Plaintiff also cannot establish injury simply by claiming violation of a procedural right: "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). The Supreme Court has emphasized that "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496

(2009). A plaintiff claiming violation of a procedural right must show not only that defendant "omitted some procedural requirement," but also that it is "substantially probable" that this procedural breach caused "the essential injury to the plaintiff's own interest." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159 (D.C. Cir. 2005) *see also Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664-65 (D.C. Cir. 1996) ("To demonstrate standing, then, a procedural-rights plaintiff must show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest.").

Plaintiff cannot establish that the alleged procedural breach—issuance of the Memorandum without notice and comment—caused any actual injury to a concrete, particularized interest of Plaintiff. Plaintiff has not produced any evidence of any actual change to Plaintiff's treatment, housing, or safety that occurred *because of* the Memorandum. Further, Plaintiff identifies no assaults, searches, or adverse placements that occurred after the Memorandum issued. "Hypothesized increased risk" that Plaintiff will be harmed by the Memorandum's new auditing guidance is insufficient to establish standing. *Ctr. for Law & Educ.*, 396 F.3d at 1161. "Indeed, were all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, non-imminent injuries could be dressed up as increased risk of future injury." *Id.* (internal quotations omitted).

The proper inquiry is not whether any injury could result from the denial of procedural rights, but whether a constitutionally sufficient injury has resulted from the underlying substantive decision. *See City of Orrville, Ohio v. FERC*, 147 F.3d 979, 986 (D.C. Cir. 1998) ("injury in fact, caused by the *substance* of an agency action or inaction, is an essential element of a petitioner's standing" to challenge an alleged deprivation of procedural rights) (internal quotation marks

omitted). Plaintiff's reliance on speculative harms from a future audit decision is insufficient because there is no concrete, particularized, and actual injury. *See Lujan v. Nat'l Wildlife Fed'n*, 504 U.S. 555, 560-61 (1990).

Plaintiff also misses the mark by relying on this Court's decision in *Nat'l Ass'n for Advancement of Colored People v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 53 (D.D.C. 2025). There, the Department of Education issued various documents directing federally funded educational institutions to cease all racially discriminatory initiatives and unlawful DEI programs. *Id.* at 59-60. The plaintiffs alleged the documents were issued without notice-and-comment and the Court found Plaintiffs likely had standing to assert that claim because they had been deprived of the alleged "procedural right to protect their concrete interests under at least the Fifth Amendment[.]" *Id.* at 62. Here, however, Plaintiff cannot establish "a concrete substantive interest" in the PREA Standards or the conduct of particular audits. *Del. Dep't of Nat. Res. & Envtl. Control v. FERC*, 558 F.3d 575, 578-79 (D.C. Cir. 2009) ("Delaware's difficulty is that an alleged procedural injury does not confer standing unless the procedure affects a concrete substantive interest."). In enacting PREA, Congress did not create any enforceable individual rights, let alone a right to particular audit findings. Further, PREA auditors simply inspect facilities and write reports; they have no authority to make substantive changes to correctional facilities' policies or procedures. *See Summers*, 555 U.S. at 496–97 (2009) ("Only a 'person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.'").

Plaintiff's reliance on cases recognizing a cognizable injury where a party lost "an opportunity to pursue a benefit" is similarly inapposite. *See* Pls.' Opp. at 5. *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989), found standing for contractors to challenge

an Air Force program denying them the opportunity to compete for government contracts that they previously held. Similarly, in *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, No. 1:25-CV-00999 (TNM), 2026 WL 523023, at *7 (D.D.C. Feb. 25, 2026), the agency refusal to process the plaintiff's grant application cost it "the chance to apply for grant money." Plaintiffs have lost no analogous "benefit" as a result of the Memorandum's guidance directing PREA auditors not to evaluate certain PREA Standards. While Plaintiff asserts the loss of periodic evaluations of compliance with PREA Standards, Plaintiff has not established any concrete or actual injury traceable to that alleged lost opportunity. Unlike contractors or grant applicants who could establish a direct causal connection between the lost opportunity and a concrete financial injury, Plaintiff is simply left to speculate about the impact of the Memorandum on the conditions of confinement at Plaintiff's correctional facility.

Plaintiff is equally mistaken about the effect of PREA audits and the authority of PREA auditors. Plaintiff states that Defendants cannot "defeat traceability when the allegedly 'independent' actor is its own subordinate agency." Pls.' Opp. at 9. But Plaintiffs misunderstand the role of an auditor. A PREA auditor is not a subordinate agency. Other than training received from DOJ, an auditor is wholly independent and outside the authority of the Department of Justice. The Standards make this clear when they state that PREA audits must be conducted by "outside individuals" who are "not part of, or under the authority of, the agency." 28 C.F.R. § 115.402(a)(1), (3). In fact, independence is a crucial characteristic of an auditor, as it preserves unprejudiced review without meddling or bias on the part of DOJ.

Auditors' independence directly correlates to their level of authority. Because auditors are outside DOJ's chain of command, they have no authority to effect change in a facility. Plaintiff claims that Defendants "drastically misstate[] the audit process's significance," but Defendants'

Motion merely reiterated what is already set in the PREA Standards. PREA Auditors, under the Standards, audit a facility for noncompliance. *See generally* 28 C.F.R. § 115.403. Once the audit is complete, the auditor issues a finding. *Id.* § 115.403(c). If the auditor finds that a facility does not comply with the standards, he develops a corrective plan with the agency. *Id.* § 115.404(a), (b). The agency then has 180 days to correct the deficiencies, after which the auditor issues a final determination. *Id.* § 115.404(d). The auditor's authority ends there. Plaintiff fails to show how an auditor has any authority beyond this to affect change in a facility.[1]

Against this backdrop, Defendants' redressability argument makes perfect sense. Plaintiff's alleged harms will not be redressed by any order from this Court. For instance, were the Court to issue an order vacating the Memorandum and requiring auditors to audit Plaintiff's facility on all of the Standards, it would not prevent a facility from housing Plaintiff with other male inmates or strip-searching Plaintiff by a male officer. The maximum such an order would accomplish is a determination of "Does Not Meet Standard" by the auditor. A written finding in a report does nothing for Plaintiff's practical situation.

Plaintiff states that the Court should look to the "substance and practical effect of agency action, not the label the agency assigns to it." Pls.' Opp. at 26. This is correct. The practical effect of the Memorandum is that an auditor will no longer issue a written report on certain sections of the PREA Standards. Reversal of this effect is not a remedy for Plaintiff's alleged injuries.

The Court should therefore find that it does not have jurisdiction to hear Plaintiff's claim because Plaintiff lacks standing.

---

[redacted]

**III. The Memorandum is not final agency action.**

Plaintiff's argument that the Memorandum is final agency action stems from a faulty premise. Plaintiff claims that the Memorandum is legally consequential because it "suspend[s] the affected Standards going forward," Pls.' Opp. at 12, and "eliminates every consequence the regulations attach to noncompliance with these particular PREA Standards." Pls.' Opp. at 15. Not so. As explained above, the Memorandum only affects the audit instrument; it amends DOJ's instructions to PREA auditors on how and what to audit. It does not change the Standards themselves, and facilities remain subject to them in their entirety. When viewed through this lens, it is clear that the Memorandum cannot have any legal consequences. Pausing audits does not change the substantive regulation at issue.

Much of Plaintiff's arguments to the contrary hinge on the claim that the Memorandum "eliminat[es] the consequences that otherwise follow from noncompliance." Pls.' Opp. at 18. But this fails to specify what regulatory consequences are at stake. As described above, the maximum an auditor can accomplish is to determine that a facility is not complying with the Standards. Plaintiff claims that the consequences of noncompliance are "an adverse audit finding and mandatory corrective action." Pls.' Opp. at 19. But the corrective action occurs prior to the final determination of compliance, and an agency can still be found noncompliant after that period. Once the 180-day corrective period expires, the only "consequence" for a facility is a written report. Plaintiff fails to show that this is a consequence under past precedent. [redacted] the Standards specify no consequences or adverse actions if a facility receives a failing rating.

Plaintiff's argument regarding implementation of the regulations similarly fails. Plaintiff analogizes to *Clean Air Counsel v. Pruitt*, 862 F.3d 1, 7-8 (D.C. Cir. 2017) and *United States ex*

*rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), by arguing that this case "reliev[es] parties of compliance obligations," and "direct[s] those charged with implementing them not to follow those regulations." Pls.' Opp. at 18-19. But again, this argument treats auditors as enforcers, something that the Standards do not contemplate. Auditors assess compliance, nothing more. It is the facility, along with its overseeing agency, which controls how the facility operates. Because the Memorandum does not strip Plaintiff of any legal protection or change any correctional facility's legal obligations, it lacks the legal consequences characteristic of final agency action.

Finally, Plaintiff argues that despite DOJ's future rulemaking, the memorandum remains final agency action. Pls.' Opp. at 19-20. Plaintiff again mistakes the consequences of the Memorandum. Any future rulemaking will not "formalize the Memorandum's directives" as Plaintiff contends. Pls.' Opp. at 20. Rather, DOJ is contemplating future rulemaking to amend the PREA regulations. If or when such amendments become final, DOJ would also have to amend the PREA audit instrument. The two are separate entities. The Memorandum does not amend the regulations, and amending the regulations does not amend the audit instrument. Again, because the Memorandum has no legal effect on the regulations, it is not final agency action.

## IV. The Memorandum's Guidance to Auditors is Not Justiciable Because It Addresses a Matter Committed to Agency Discretion by Law.

The Memorandum is an exercise of agency discretion "presumed immune from judicial review," *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985). *See* Defs.' Mot. at 15-16. The APA bars judicial review of certain categories of decisions that "courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)). These decisions are typically unreviewable because there exists "no meaningful standard against which to judge the agency's exercise of discretion" in these areas. *Chaney*, 470 U.S. at 830.

Among the decisions committed to executive discretion are "an agency's exercise of enforcement power." *Chaney*, 470 U.S. at 831. Such judgments involve "a complicated balancing of factors which are peculiarly within [an agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall priorities, and, indeed, whether the agency has enough resources to undertake the action at all." *Id.* As there is "no meaningful standard against which to judge the agency is exercise of discretion" in weighing these factors, an agency's exercise of enforcement powers is "presumed immune from judicial review under § 701(a)(2)." *Id.* at 830, 832.

For instance, an "agency decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.* at 831. After all, "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing," and it "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831-32.

Just as "the decision whether or not to prosecute" presumptively "rests entirely in [the prosecutor's] discretion," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted), the Memorandum's guidance regarding the manner in which audits should be undertaken is vested in the agency's discretion. 34 U.S.C. § 30307(a) authorizes DOJ to adopt PREA Standards, and those Standards expressly direct DOJ to "develop and issue an audit instrument" to guide the "conduct . . . and contents of the audit." 28 C.F.R. § 115.401(d). The law thus provides DOJ with discretion to determine the appropriate manner in which the audits will be conducted.

In response, Plaintiffs contend that "Section 701(a)(2) does not answer a procedural [APA] claim." Pls.' Mot. at 21. But Plaintiff's procedural claim is that the PREA standards cannot be

amended without going through notice-and-comment rulemaking, not a procedural challenge to the Memorandum itself. The agency decision that Plaintiff challenges is the issuance of the Memorandum. The question then is whether the Memorandum is the type of enforcement guidance that is reviewable under the APA and, for the reasons explained above, it is not.

Plaintiff also incorrectly asserts that there is tension between Defendants' standing and APA justiciability arguments that is "fatal" to Defendants' position. Pls.' Opp. at 20-21. Whether Plaintiff has standing and whether the Memorandum is committed to agency discretion by law are two separate issues that require distinct analyses. For standing, the question is whether the Memorandum's guidance causes a concrete injury that is redressable by this Court. As set forth above, the Memorandum does none of those things. By contrast, the question under § 702(a)(2) is whether the decision reflected in the Memorandum about how to allocate auditor resources and what PREA Standards to prioritize during audits falls within the agency's discretion. There is no inconsistency in taking the position that the Memorandum does not establish the requisite injury for Article III purposes but also involves prioritization of agency resources protected by *Chaney* and its progeny.

The discretion to decide how to undertake audits of correctional facilities is not nullified by what Plaintiffs describe as a "general policy" and "categorical[]" nature of the Memorandum. Pls.' Opp. at 23. *Chaney* itself involved a similarly "categorical" nonenforcement policy. There, the plaintiffs sought to compel enforcement of the FDCA's misbranding provision with respect to drugs used for capital punishment, requesting "various investigatory and enforcement actions" against "drug manufacturers," "prison administrators," and "all [others] in the chain of distribution" throughout Texas, Oklahoma, and potentially "several other[]" states that had adopted lethal injection. 470 U.S. at 823-24. The Supreme Court rejected this wide-ranging

request, holding that the FDA's categorical conclusion that its enforcement discretion "should not be exercised to interfere with this particular aspect of state criminal justice systems" was unreviewable. *Id.* at 824. *Compare Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027 (D.C. Cir. 2007) (holding non-reviewable a broad agreement between the agency and an entire industry, which deferred agency enforcement for several years) *with Edison Elec. Inst. v. EPA*, 996 F.2d 326, 333 (D.C. Cir. 1993) (holding case reviewable where plaintiffs "are not challenging [how] the EPA has chosen to exercise its enforcement discretion" but, "[i]nstead, . . .the EPA's interpretation of section 3004(j)").

This discretionary authority explains why the *Accardi* line of cases does not apply here. *See* Pls.' Opp at 19. The *Accardi* doctrine refers to the Supreme Court's decision in *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), in which the Court held that the failure of the Board of Immigration Appeals to comply with its own established regulations was reversible error. The Supreme Court, however, has declined to apply the *Accardi* doctrine to agency directives that are "mere aids to the exercise of the agency's independent discretion[,]" and that are "not intended primarily to confer important procedural benefits upon individuals[.]" *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970). The Memorandum at issue here is an archetypical agency guidance document that instructs auditors on the manner in which they should assess correctional facilities under PREA. *See United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2002) (stating that "no case has ever held that the *Accardi* doctrine applies to the internal regulations of the DOJ") (citation omitted).

Because PREA and its implementing regulations provide DOJ with discretionary authority governing the scope and manner of audits, the Memorandum is committed to the agency's discretion by law.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants on all counts and deny Plaintiffs' motions for summary judgment on all counts.

Dated: October 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
(D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed under seal through the ECF system and will be sent to Plaintiff's counsel at the following emails:

awhelan@nclrights.org

MBerliner@lowenstein.com

NKraner@lowenstein.com

KBrown@lowenstein.com

Alyssa@wardenskilaw.com

ACipriano@lowenstein.com

AShalom@lowenstein.com

KDOnofrio@lowenstein.com

AWasserman@lowenstein.com

saustin@gladlaw.org

Dated: October 15, 2026

*/s/ Alexander J. Yun*
ALEXANDER J. YUN